IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Case No. _____

| | |
|---|---|
| JEFFREY ALLEN MATTHEWS,<br><br>        *Plaintiff*,<br><br>v.<br><br>DANIEL MARIN, in his individual and official capacities; CITY OF STATESVILLE; and DOES 1 through 20, INCLUSIVE,<br><br>        *Defendants*. | **COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## I.    <u>NATURE OF THE CASE</u>

1.    At approximately 2:00 AM on December 28, 2021, Daniel Marin ("Officer Marin"), a police officer with the Statesville Police Department ("SPD") in Statesville, North Carolina, stopped a vehicle driven by Jeffrey Allen Matthews ("Plaintiff" or "Mr. Matthews"). Officer Marin accused Mr. Matthews of running a red light at an intersection in downtown Statesville. But this was not true. Mr. Matthews, a 58-year-old disabled Army veteran and former sales and marketing director, and his fiancée, Vivian Rucker, had noticed Officer Marin's police squad car stopped at the intersection and made sure to obey all traffic laws.

2.    When Mr. Matthews exercised his lawful right to explain this fact to Officer Marin, the officer quickly escalated the encounter. Officer Marin ordered Mr. Matthews to exit the vehicle and attempted to arrest him by grabbing his shoulders and forcefully shoving him against the vehicle before flinging him to the ground. As Mr. Matthews tried to defend himself, a scuffle ensued, during which Officer Marin repeatedly struck Mr. Matthews with his fists.

3.     When the two separated, Officer Marin drew his government-issued Taser and pointed it at Mr. Matthews who pleaded with the officer not to tase him. Mr. Matthews was unarmed and posed no danger to Officer Marin nor to anyone else.

4.     Nevertheless, Officer Marin fired his Taser, and as Mr. Matthews began to run away, Officer Marin chased him *from behind* and activated the Taser's electrical pulse, shocking Mr. Matthews and sending him crashing to the ground.

5.     The entire encounter from the initial traffic stop to the tasing took less ninety seconds.

6.     To make matters worse, when Officer Marin initiated criminal charges against Mr. Matthews, he fabricated yet more evidence to justify the arrest and use of force. Officer Marin, through a fellow officer, alleged to a magistrate judge that Mr. Matthews had "choked" him and placed him into a "headlock." SPD suspected the fabrications and launched an internal affairs investigation the next day. The investigation concluded that these allegations were false.

7.     Officer Marin's conduct violated the Fourth and Fourteenth Amendments to the United States Constitution as well as North Carolina tort law. Accordingly, this lawsuit brings claims for false arrest, excessive force, assault and battery, negligence and malicious prosecution. The City of Statesville ("City" or "Statesville") is also liable for inadequately training its officers including Officer Marin regarding their duties to protect the City's citizens from the Fourth and Fourteenth Amendment constitutional violations. This lawsuit therefore also brings a claim against the City for inadequate training under *Monell*.

## II.     JURISDICTION

8.     This Court has original subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. § 1988 because the claims arise under

the laws of the United States and seek redress for rights guaranteed by the United States Constitution and deprived under color of state law.

9. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367. These claims derive from the same nucleus of operative facts and are part of the same case or controversy that give rise to the federally based claims.

10. Plaintiff's claims are also timely filed. On December 19, 2024, Plaintiff and Defendants entered into a first Tolling Agreement, effective December 19, 2024, that tolled and suspended all applicable statutes of limitation and repose, as well as any other time bars, until and including March 28, 2025. On March 20, 2025, Plaintiff and Defendants entered into a second Tolling Agreement, effective March 20, 2025, that further tolled and suspended all applicable statutes of limitation and repose, as well as any other time bars, until and including June 16, 2025.

### III. VENUE

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) the events giving rise to the claims occurred in this District, and (ii) the Defendant City of Statesville resides in this District and, upon information and belief, Defendant Daniel Marin is a North Carolina resident.

### IV. PARTIES

12. Plaintiff Jeffrey Allen Matthews ("Plaintiff" or "Mr. Matthews") is a citizen and resident of Iredell County, North Carolina.

13. Upon information and belief, Defendant Daniel Marin ("Officer Marin") is a citizen and resident of Brunswick County, North Carolina. At the time of the events alleged herein, Officer Marin was a citizen and resident of Iredell County, North Carolina.

3

14.     At the time of the events alleged herein, Officer Marin was a sworn police officer with the Statesville Police Department. Upon information and belief, Officer Marin's employment with the Statesville Police Department began on or about November 9, 2020.

15.     Officer Marin is sued in his individual and official capacities as to the state law claims for conduct that was deliberate, malicious, willful, wanton and corrupt, and that exceeded the scope of his lawful authority. He is therefore not entitled to any public official immunity or governmental immunity that might otherwise shield him from liability. As for Plaintiff's claims under 42 U.S.C. § 1983, Officer Marin is sued in his individual capacity for conduct taken under color of state law in violation of the United States Constitution and he is not entitled to any qualified immunity or other immunity that might otherwise shield him from liability.

16.     Defendant City of Stateville ("City" or "Statesville") was, at all times relevant herein, a municipal corporation duly organized and existing under the laws of North Carolina that was acting under the laws of North Carolina. Defendant Statesville hired, retained, trained and supervised Officer Marin to carry out his duties on behalf of the City as a police officer with the Statesville Police Department ("SPD"). Upon information and belief, Statesville has waived immunity for liability by the purchase of commercial liability insurance and/or by participating in a government risk pool. Accordingly, Statesville has waived any claim of governmental and sovereign immunity with respect to this action. Statesville is sued under state law claims for the conduct of its employees (including Officer Marin and Does 1-20) for which the City is liable under *respondeat superior*. Statesville is also sued under a federal law claim for its own conduct for which the City is liable under *Monell*.

17.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names Does 1 through 20, inclusive. Plaintiff is informed and believes,

4

and thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the unlawful conduct alleged herein.

## V.    FACTUAL BACKGROUND

**A.    Mr. Matthews Suffers from Post-Traumatic Stress Disorder.**

18.    Plaintiff Jeffrey Allen Matthews is a disabled veteran who was honorably discharged after serving seven years in the United States Army. He subsequently returned home to North Carolina and rose to leadership positions with several newspaper outlets, serving most recently as a sales and marketing director for the Hickory Daily Record. He is also a dedicated member of his church community and takes special pleasure in singing with the church's gospel choir.

19.    Unfortunately, like many disabled veterans, Mr. Matthews has been diagnosed with Post-Traumatic Stress Disorder ("PTSD"). Mr. Matthews' PTSD is due in part to his experience with the Army during a live fire infiltration exercise that resulted in multiple fatalities. The Department of Veterans Affairs ("VA") assigned Mr. Matthews a rating of 70% service-connected PTSD based on decades of treatment records and the VA's own evaluations. According to the VA, Mr. Matthews' PTSD presents as anxiety, chronic sleep impairment, depression, difficulty in adapting to stressful circumstances, disturbances of mood, and suspiciousness, among other manifestations.

**B.    Mr. Matthews Obeyed All Traffic Laws While Driving Home from Dinner with His Fiancée.**

20.    Just after midnight on December 28, 2021, Mr. Matthews was finishing dinner at a restaurant with his fiancée, Vivian Rucker, when their friend who worked at the restaurant asked for a ride home. The pair agreed and drove the friend to her home on East Bell Street, a one-block residential street in downtown Statesville, North Carolina.

5

21.    Mr. Matthews drove.

22.    When the trio reached East Bell Street, Mr. Matthews parallel parked on the road facing west toward the intersection with South Center Street. Given the late hour, Ms. Rucker had fallen asleep, but Mr. Matthews parked to say goodnight to their friend and to ensure she entered her house safely.

23.    While parked, Mr. Matthews noticed a police squad car ahead at the intersection. The squad car was facing south on South Center Street. It was no more than fifteen yards away and was easy to spot. Before driving off, Mr. Matthews rustled Ms. Rucker awake and asked her to fasten her seat belt.

24.    Ms. Rucker noticed the squad car and fastened her seat belt.

25.    Mr. Matthews then approached the intersection and turned left onto South Center Street in front of the squad car. Mr. Matthews' traffic light was green. Had the light been red, Mr. Matthews would have crashed into the squad car as it had the right of way.

26.    Mr. Matthews did not violate any traffic laws.

**C.    Officer Marin Falsely Arrested Mr. Matthews and Used Excessive Force Without Justification.**

27.    The squad car was driven by Defendant Officer Marin, who began to follow Mr. Matthews down South Center Street.

28.    Officer Marin did not immediately activate his blue lights. He instead followed Mr. Matthews for approximately 1.5 miles and only then activated his lights and conducted a traffic stop. The stop took place near 1836 Shelton Avenue in Statesville, close to the house where Mr. Matthews and Ms. Rucker still live.

29.    Officer Marin approached Mr. Matthews' vehicle on the passenger side (where Ms. Rucker was sitting with her seatbelt fastened).

6

30.     Officer Marin began the encounter by expressing doubt as to the very basis for the traffic stop. He stated: "So when I saw you come off Bell Street, *I'm pretty sure* that light was red when you made a left turn."

31.     Mr. Matthews, who had seen Officer Marin's squad car at the intersection and obeyed all traffic laws, knew that Officer Marin was fabricating the alleged traffic violation as a pretext to conduct the traffic stop. Mr. Matthews thus responded that he had seen Officer Marin "sitting there" at the intersection and would not have run a red light.

32.     Officer Marin immediately escalated the encounter and responded aggressively and with a sudden onset of confidence in his story, exclaiming: "Alright, you gonna sit here and [expletive] argue with me? . . . I watched you run that light, you never stopped."

33.     Officer Marin then barked, "Step out of the car. Step out of the car. If you're gonna act like that, step out of the car."

34.     Mr. Matthews complied and stepped out of the car. He walked toward the rear of the car from the driver's side, where he met Officer Marin who walked toward the same spot from the passenger's side.

35.     As the two met, Mr. Matthews attempted to explain that he was an Army veteran in the hopes that Officer Marin would treat him with dignity. Officer Marin ignored Mr. Matthews and ordered him to place his hands on the car, stating: "Put your hands on the car." But Officer Marin did not give Mr. Matthews an opportunity to comply. He immediately grabbed Mr. Matthews' shoulders and forcefully shoved him against the trunk of the car before flinging Mr. Matthews to the ground. Officer Marin stumbled down with him.

36.     In response, Mr. Matthews exercised his legal right to defend himself against a police officer's unlawful arrest and a short scuffle ensued. During the scuffle, Mr. Matthews

7

again tried to explain that he was an Army veteran. Officer Marin continued to ignore Mr. Matthews and instead repeatedly struck Mr. Matthews with his fists.

37.     Only fourteen seconds passed from the moment Officer Marin initiated the scuffle by grabbing Mr. Matthews's shoulders to when the scuffle ended.

38.     When the scuffle ended and the two separated, Officer Marin drew his government-issued Taser and pointed it at Mr. Matthews who pleaded, "I'm retired from the Army, man. If you shoot me, you ain't got no reason to shoot me, I'm stopped!" The two were standing approximately seven-to-eight feet apart. Mr. Matthews was turned slightly away from Officer Marin in a manner suggesting that Mr. Matthews was submitting.

39.     Mr. Matthews had indeed "stopped."

40.     Mr. Matthews then stated that he wanted to show Officer Marin his "ID," referring to his military identification card. As Mr. Matthews reached into his front sweatshirt pocket to retrieve the card, Officer Marin fired the Taser at Mr. Matthews.

41.     Mr. Matthews immediately turned away from Officer Marin and ran in the opposite direction. He was able to run because the Taser's probes had connected to Mr. Matthews' sweatshirt but not his body, meaning the electricity had not entered his body.

42.     As he fled, Mr. Matthews posed no risk of immediate danger to Officer Marin nor to anyone else. Mr. Matthews was unarmed and had submitted and was now running *away* from Officer Marin.

43.     In fact, Mr. Matthews was terrified as he ran. Officer Marin had unlawfully stopped him, had unlawfully assaulted him and was now attempting to tase him. Mr. Matthews feared for his life.

44.     Ms. Rucker was standing nearby pleading with Officer Marin to stop.

45.     Officer Marin did not stop.

46.     Instead, he chased Mr. Matthews *from behind* and continued to activate the Taser until the probes finally connected with Mr. Matthews' body, shocking him and sending him crashing to the ground.

47.     Mr. Matthews then lay face down on the ground with his hands above his head. The Taser probes remained connected to his body. Officer Marin, while towering over Mr. Matthews, alerted headquarters that a Taser had been deployed and then yelled: "If you move, I'll [expletive] tase you again, you understand me? Don't [expletive] move." Mr. Matthews did not move. Moments later, Mr. Matthews was handcuffed while lying on the ground.

48.     This was a warrantless arrest.

49.     Mr. Matthews suffered severe injuries from his encounter with Officer Marin. He tore his left bicep tendon and his left rotator cuff. Both injuries required surgery and extensive post-surgery physical therapy. Mr. Matthews also lost two teeth and suffered neck pain and a severe back sprain.

50.     The encounter also caused Mr. Matthews to suffer severe emotional and mental distress and exacerbated his PTSD. This distress is ongoing. Mr. Matthews, for example, associates the encounter with the holiday season and with the location of the traffic stop close to his home, both of which tend to trigger his PTSD.

51.     Mr. Matthews incurred significant medical expenses in treating these injuries.

**D.     Officer Marin Initiated Criminal Charges Against Mr. Matthews.**

52.     After the tasing and warrantless arrest, additional officers from the Statesville Police Department ("SPD") arrived on the scene. Officer Marin demanded that the officers "charge [Mr. Matthews] with every [expletive] thing there is."

9

53.     The SPD officers conducted a warrantless search of Mr. Matthews' car and found three items: approximately $7,000 in cash; a cashier's check for $10,000; and a small drug pipe with residue. The cash and check were found in a sealed Bank of America envelope with the bank's rubber bands wrapped around the cash bills. Mr. Matthews explained that the cash and check were settlement funds he had just received for a workplace injury to his finger that was partially amputated. The envelope contained a receipt for the funds from the bank. The SPD nevertheless seized the cash. The SPD also seized the small drug pipe but left the check with Ms. Rucker.

54.     Officer T.W. Chapman with the SPD transported Mr. Matthews to the Iredell County Detention Center.

55.     Officer Chapman did not witness the events leading to Mr. Matthews' arrest. He learned of those events solely from Officer Marin's roadside statements, including allegations that Mr. Matthews had "choked" Officer Marin and placed him in a "headlock."

56.     Based on Officer Marin's statements and his demand that the SPD "charge [Mr. Matthews] with every [expletive] thing there is," Officer Chapman pressed the following charges before a magistrate judge at the detention center:

       a.      Assault on a Law Enforcement Officer (N.C.G.S. § 14-34.7(c)(1));

       b.      Resist, Delay or Obstruct a Public Officer (N.C.G.S. § 14-223); and

       c.      Possession of Drug Paraphernalia with Intent to Use (N.C.G.S. § 90-113.22(a)).

57.     The SPD did *not* charge Mr. Matthews with any traffic violations.

10

58.     The magistrate judge entered a Magistrate's Order finding probable cause for all three charges. This Order was entered while Mr. Matthews was detained and served to continue his detention.

59.     Mr. Matthews was released from jail at approximately 11:00 AM on December 28, 2021, about ten hours after the incident.

60.     By 12:00 PM that same day, Captain Tenita Huffman with the SPD had finished reviewing the case file and "concluded there was not probable cause" to seize the cash. Captain Huffman's report detailed the reasons why probable cause never existed to seize the cash, including that Mr. Matthews and Ms. Rucker had independently corroborated the source of the cash (a workers' compensation settlement) during their respective roadside interviews with the SPD.

61.     The SPD therefore returned the seized cash to Mr. Matthews just hours after his release.

62.     Remarkably, the SPD also returned the seized small drug pipe. The residue was still inside the pipe.

**E.     Officer Marin Fabricated Probable Cause for the Criminal Charges and Fabricated the Justifications for Using Force.**

63.     On December 28, 2021, the day of the incident, Officer Marin completed a use of force report. The report fabricated significant details regarding the encounter with Mr. Matthews.

64.     Officer Marin alleged in the report that Mr. Matthews "choked" him and placed him in a "headlock" during the scuffle and that these incidents ultimately led Officer Marin to tase Mr. Matthews.

65.     These allegations were false.

66. Recognizing this possibility, the SPD launched an internal affairs investigation *the very next day*: December 29, 2021. The SPD compiled an extensive report detailing the investigation. The report concluded:

> "Regarding the original allegation regarding whether the documentation contained in the use of force[] [report] is correct or not; that has been proven as a negative. Officer Marin stated . . . several times . . . that he was being choked and placed into a headlock. Officer Marin was never physically placed in such a position. . . . This complaint is SUSTAINED by Professional Standards."

67. Officer Marin is no longer employed by the SPD.

68. Upon information and belief, Officer Marin moved to Texas a few months after the internal affairs report was finalized.

69. All charges against Mr. Matthews were dropped.

## VI.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Violation of 42 U.S.C. § 1983 Against Officer Marin for False Arrest Under the Fourth Amendment)

70. Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

71. Mr. Matthews brings this claim against Officer Marin in his individual capacity as a police officer with the Statesville Police Department.

72. This claim is brought pursuant to 42 U.S.C. § 1983 for violation of rights protected by the Fourth Amendment. A false arrest claim under the Fourth Amendment requires evaluating whether the officer had objective probable cause for the arrest based on "the totality of the circumstances known to the officer at the time of the arrest."

12

73.     At the time of Mr. Matthews' arrest, Officer Marin did not have objective probable cause to justify the arrest.

74.     Officer Marin did not have a warrant for Mr. Matthews' arrest.

75.     Mr. Matthews did not run the red light.

76.     Mr. Matthews did not assault Officer Marin under N.C.G.S. § 14-34.7(c)(1).

77.     Mr. Matthews did not resist, delay or obstruct Officer Marin under N.C.G.S. § 14-223.

78.     Officer Marin fabricated the alleged traffic violation as a pretext to conduct the traffic stop and attempted to arrest Mr. Matthews on that basis. In response, Mr. Matthews exercised his legal right to use reasonably necessary force to prevent this unlawful restraint on his liberty.

79.     Officer Marin knew these facts as he witnessed them firsthand. Officer Marin thus knew the arrest was unauthorized.

80.     Officer Marin nevertheless arrested Mr. Matthews despite the lack of objective probable cause and without any legal justification, constituting an unreasonable seizure and false arrest under the Fourth Amendment.

81.     This false arrest was not accidental.

82.     This false arrest caused serious injury to Mr. Matthews.

83.     Mr. Matthews seeks and is entitled to compensatory damages and all other damages for the injuries suffered due to Officer Marin's violations of Mr. Matthews' rights under the Fourth Amendment.

84.     Mr. Matthews also seeks punitive damages to the extent allowed by law against Officer Marin for his actions that were malicious, willful and wanton.

13

85.     Mr. Matthews also seeks attorneys' fees to the extent allowed by law, including pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF
**(False Arrest Against Officer Marin and the City of Statesville)**

86.     Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

87.     Mr. Matthews brings this claim under state law against Officer Marin in his individual and official capacities as a police officer with the Statesville Police Department.

88.     At the time of his actions as alleged herein, Officer Marin was acting as an employee and agent of the Statesville Police Department and the City of Statesville and within the course and scope of his official employment with those agencies. Officer Marin was on duty and was assigned to carry out his lawful duties which he failed to do.

89.     At the time of Mr. Matthews' arrest, Officer Marin did not have objective probable cause to justify the arrest.

90.     Officer Marin did not have a warrant for Mr. Matthews' arrest.

91.     Mr. Matthews did not run the red light.

92.     Mr. Matthews did not assault Officer Marin under N.C.G.S. § 14-34.7(c)(1).

93.     Mr. Matthews did not resist, delay or obstruct Officer Marin under N.C.G.S. § 14-223.

94.     Officer Marin fabricated the alleged traffic violation as a pretext to conduct the traffic stop and attempted to arrest Mr. Matthews on that basis. In response, Mr. Matthews exercised his legal right to use reasonably necessary force to prevent this unlawful restraint on his liberty.

14

95. Officer Marin knew these facts as he witnessed them firsthand. Officer Marin thus knew the arrest was unauthorized.

96. Officer Marin nevertheless arrested Mr. Matthews despite the lack of objective probable cause and without any legal justification, constituting a false arrest under state law.

97. This false arrest was not accidental.

98. This false arrest caused serious injury to Mr. Matthews.

99. Mr. Matthews also brings this claim against the City of Statesville as the principal of its agent, Officer Marin, under *respondeat superior*. Upon information and belief, the City has waived immunity for claims brought against it that arise from the conduct of its agents who, like Officer Marin here, act within the scope of their employment.

100. Mr. Matthews is entitled to and seeks compensatory damages from Officer Marin and the City.

101. Mr. Matthews is entitled to and seeks punitive damages from Officer Marin.

**THIRD CLAIM FOR RELIEF**
**(Violation of 42 U.S.C. § 1983 Against Officer Marin for Use of Excessive Force Under the Fourth and Fourteenth Amendments)**

102. Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

103. Mr. Matthews brings this claim against Officer Marin in his individual capacity as a police officer with the Statesville Police Department.

104. This claim is brought pursuant to 42 U.S.C. § 1983 for violation of rights protected by the Fourth Amendment and the Fourteenth Amendment to the United States Constitution. Specifically, Mr. Matthews brings this claim under the Fourth Amendment (which applies to the actions of Officer Marin under the Fourteenth Amendment); and Mr. Matthews

15

brings this claim as an independent, standalone claim under the Fourteenth Amendment. Both the Fourth Amendment claim (made applicable under the Fourteenth Amendment) and the independent Fourteenth Amendment claim are evaluated under the same "objective reasonableness" standard. This standard requires analyzing the "totality of the circumstances."

105.     All actions complained of herein were taken under color of state law for purposes of 42 U.S.C. § 1983.

106.     Officer Marin grabbed Mr. Matthews' shoulders and forcefully shoved him against the car before flinging him to the ground. And during the ensuing scuffle, Officer Marin repeatedly struck Mr. Matthews with his fists.

107.     Officer Marin fired his government-issued Taser at Mr. Matthews.

108.     Even though Mr. Matthews then ran *away* from Officer Marin, fearing for his life and posing no danger, Officer Marin chased Mr. Matthews and tased him *from behind*, sending him crashing to the ground.

109.     Officer Marin carried out these applications of force with no legal justification, constituting excessive force under the Fourth and Fourteenth Amendments.

110.     These applications of force were not accidental.

111.     These applications of force caused serious injury to Mr. Matthews.

112.     Mr. Matthews seeks and is entitled to compensatory damages and all other damages for the injuries suffered due to Officer Marin's violations of Mr. Matthews' rights under the Fourth and Fourteenth Amendments.

113.     Mr. Matthews also seeks punitive damages to the extent allowed by law against Officer Marin for his actions that were malicious, willful and wanton.

114.    Mr. Matthews also seeks attorneys' fees to the extent allowed by law, including pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF
**(Assault and Battery and Negligence Against Officer Marin and the City of Statesville)**

115.    Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

116.    Mr. Matthews brings these claims under state law against Officer Marin in his individual and official capacities as a police officer with the Statesville Police Department.

117.    At the time of his actions as alleged herein, Officer Marin was acting as an employee and agent of the Statesville Police Department and the City of Statesville and within the course and scope of his official employment with those agencies. Officer Marin was on duty and was assigned to carry out his lawful duties which he failed to do.

118.    Officer Marin's use of excessive force against Mr. Matthews constituted assault and battery.

119.    Further, in using excessive force against Mr. Matthews, Officer Marin acted deliberately, maliciously, willfully, wantonly and corruptly; acted outside the scope of his lawful authority; and acted without Mr. Matthews' consent. In doing so, Officer Marin caused the serious injuries and medical expenses alleged herein.

120.    In the alternative, Officer Marin used excessive force against Mr. Matthews negligently.

121.    Mr. Matthews also brings these claims against the City of Statesville as the principal of its agent, Officer Marin, under *respondeat superior*. Upon information and belief, the City has waived immunity for claims brought against it that arise from the conduct of its agents who, like Officer Marin here, act within the scope of their employment.

17

122.    Mr. Matthews is entitled to and seeks compensatory damages from Officer Marin and the City.

123.    Mr. Matthews is entitled to and seeks punitive damages from Officer Marin.

**FIFTH CLAIM FOR RELIEF**
**(Violation of 42 U.S.C. § 1983 Against Officer Marin for Malicious Prosecution Under the Fourth Amendment)**

124.    Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

125.    Mr. Matthews brings this claim against Officer Marin in his individual capacity as a police officer with the Statesville Police Department.

126.    This claim is brought pursuant to 42 U.S.C. § 1983 for violation of rights protected by the Fourth Amendment. The gravamen of a Fourth Amendment claim for malicious prosecution is the "wrongful initiation of charges without probable cause." Such a claim is not barred merely because some charges were valid, so long as some other charges lacked probable cause.

127.    Officer Marin initiated charges against Mr. Matthews for assault under N.C.G.S. § 14-34.7(c)(1) and for resisting, delaying or obstructing under N.C.G.S. § 14-223. Officer Marin encouraged, advised, demanded and approved of Officer Chapman appearing before the magistrate judge to secure these charges against Mr. Matthews. Officer Marin was the sole source of evidence purportedly supporting probable cause.

128.    But as discussed above, these charges were not supported by probable cause.

129.    Officer Marin knew this fact but nevertheless initiated, instituted and participated in pursuing these charges; and in doing so, he acted with malice.

18

130.     The magistrate judge entered the charges, thereby causing Mr. Matthews' unreasonable seizure to continue.

131.     The criminal proceedings terminated in Mr. Matthews' favor when all charges brought against him were dropped.

132.     This malicious prosecution was not accidental.

133.     This malicious prosecution caused serious injury to Mr. Matthews.

134.     Mr. Matthews seeks and is entitled to compensatory damages and all other damages for the injuries suffered due to Officer Marin's violations of Mr. Matthews' rights under the Fourth Amendment.

135.     Mr. Matthews also seeks punitive damages to the extent allowed by law against Officer Marin for his actions that were malicious, willful and wanton.

136.     Mr. Matthews also seeks attorneys' fees to the extent allowed by law, including pursuant to 42 U.S.C. § 1988.

### SIXTH CLAIM FOR RELIEF
**(Malicious Prosecution Against Officer Marin and the City of Statesville)**

137.     Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth herein.

138.     Mr. Matthews brings this claim under state law against Officer Marin in his individual and official capacities as a police officer with the Statesville Police Department.

139.     At the time of his actions as alleged herein, Officer Marin was acting as an employee and agent of the Statesville Police Department and the City of Statesville and within the course and scope of his official employment with those agencies. Officer Marin was on duty and was assigned to carry out his lawful duties which he failed to do.

19

140.    Officer Marin initiated charges against Mr. Matthews for assault under N.C.G.S. § 14-34.7(c)(1) and for resisting, delaying or obstructing under N.C.G.S. § 14-223. Officer Marin encouraged, advised, demanded and approved of Officer Chapman appearing before the magistrate judge to secure these charges against Mr. Matthews. Officer Marin was the sole source of evidence purportedly supporting probable cause.

141.    But as discussed above, these charges were not supported by probable cause.

142.    Officer Marin knew this fact but nevertheless initiated, instituted and participated in pursuing these charges; and in doing so, he acted with malice.

143.    The magistrate judge entered the charges, thereby causing Mr. Matthews' unreasonable seizure to continue.

144.    The criminal proceedings terminated in Mr. Matthews' favor when all charges brought against him were dropped.

145.    This malicious prosecution was not accidental.

146.    This malicious prosecution caused serious injury to Mr. Matthews.

147.    Mr. Matthews also brings this claim against the City of Statesville as the principal of its agent, Officer Marin, and under *respondeat superior*. Upon information and belief, the City has waived immunity for claims brought against it that arise from the conduct of its agents who, like Officer Marin here, act within the scope of their employment.

148.    Mr. Matthews is entitled to and seeks compensatory damages from Officer Marin and the City.

149.    Mr. Matthews is entitled to and seeks punitive damages from Officer Marin.

**SEVENTH CLAIM FOR RELIEF**
**(Violation of 42 U.S.C. § 1983 and *Monell* Against the City of Statesville**
**for Inadequate Training)**

150.     Plaintiff re-alleges and incorporates the preceding paragraphs as if set forth

herein.

151.     Mr. Matthews brings this claim against the City of Statesville.

152.     Mr. Matthews had a constitutional right to be free from unlawful searches,

seizures and detentions, and to be free from the unlawful use of excessive force, as carried out by

government officials including police officers.

153.     The City of Statesville knew that these rights are implicated in recurrent situations

that its police officers were certain to face. As relevant here, these situations included conducting

traffic stops and related warrantless arrests; deploying force during warrantless arrests including

bodily force and Tasers; and pressing criminal charges following warrantless arrests.

154.     The City of Statesville, however, deliberately failed to adopt official policies,

practices and customs informing its police officers of their constitutional duties in these

situations. Given its lack of policies, practices and customs, the City necessarily also deliberately

failed to adequately train its police officers regarding those same duties.[1]

155.     These failures reflect the City's deliberate indifference to the rights of persons

with whom its police officers come into contact.

---

[1] Mr. Matthews, through prior counsel, petitioned the City of Statesville in August 2022 for
various public records pursuant to the North Carolina Public Records Act (Chapter 132 of the
North Carolina General Statutes). This petition included a request for "any and all records of the
City of Statesville's official policies, practices and/or customs" governing the Statesville Police
Department and its officers with respect to traffic stops, warrantless arrests, use of force
(including Tasers) and pressing of criminal charges. Mr. Matthews' petition was proper under
Chapter 132. The City of Statesville responded to certain portions of the petition; but it did not
supply any information regarding its policies, practices and customs as requested, leading to the
reasonable inference that the City has none, at least not officially.

156.    The need for a municipality to protect the core constitutional rights at issue in this case was obvious. By way of example only, it was obvious that the City's citizens should not be stopped in their vehicles without probable cause. The City's failure to adopt official policies, practices and customs and related trainings was so likely to result in violations of these core rights that the City can only be said to have been deliberately indifferent to those rights.

157.    This deliberate indifference caused Officer Marin to violate Mr. Matthews' constitutional rights, resulting in the serious injuries described herein.[2]

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following judgment:

A.    An Order finding in favor of Plaintiff on all causes of action alleged herein;

B.    The grant of any reasonable request to amend Plaintiff's Complaint to conform to the discovery and evidence obtained in this lawsuit;

C.    Compensatory damages;

D.    Punitive damages;

E.    An award of attorney's fees and costs and expenses; and

F.    Such other and further relief as this Court may deem just, equitable and proper.

## VIII.    JURY DEMAND

Plaintiff demands a trial by jury of the claims asserted in this Complaint so triable.


\* \* \* Signature Block Appears on Following Page \* \* \*

---

[2] Even if the City did adopt official policies and trainings addressing these core constitutional rights at the time, it would still be liable under *Monell* because, upon information and belief, those policies and trainings were inadequate to the task.

22

Respectfully submitted this the 16th day of June, 2025.

/s/ Gagan Gupta
Gagan Gupta (NCSB #: 53119)
Email: ggupta@tinfulton.com
TIN FULTON WALKER & OWEN PLLC
119 Orange Street, Floor 2
Durham, NC 27701
Telephone: (919) 307-8400

*Counsel for Plaintiff Jeffrey Allen Matthews*